IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

EUGENE WRIGHT,                          )
                                        )
        Plaintiff,                      )
                                        )
v.                                      )        No. 23-cv-813-RJD
                                        )
                                        )
SARA STOVER and WEXFORD HEALTH)
SOURCES, INC.,                          )
                                        )
                                        )
        Defendants.[1]                  )

## ORDER

**DALY, Magistrate Judge:**

Plaintiff, formerly incarcerated within the Illinois Department of Corrections ("IDOC") at

Lawrence Correctional Center ("Lawrence"), filed this lawsuit pursuant to 42 U.S.C. §1983.  Doc.

1.  He alleges that he injured his left leg while playing basketball in May 2018.  *Id*., p. 6.  From

May 2018 until October 2020, Plaintiff requested medical care from Defendant Stover for swelling,

buckling, and popping in his left knee.  *Id*.  At each appointment, Defendant Stover told him that

nothing was wrong.  *Id*.  In October 2020, Plaintiff met with Nurse Practitioner Luking for the first

time.  *Id*. She recommended magnetic resonance imaging on Plaintiff's knee.  *Id*.  However,

Plaintiff was not transferred from the prison to an outside hospital for a radiology appointment until

May 2021 because of a Wexford Health Sources, Inc. ("Wexford")[2] custom of denying or delaying

offsite medical treatment to maximize company profits.  *Id*.  Moreover, at that appointment he

received a CT scan instead of an MRI; the CT scan revealed a "breakage" that had healed.  *Id*.  Later

that year, Plaintiff finally saw a doctor and underwent an MRI.  *Id*.

---

[1] The Clerk of Court is directed to update the docket to reflect that the full and correct name of "Wexford Health" is "Wexford Health Sources, Inc."
[2] Wexford is a private company that contracts with the IDOC to provide medical care to inmates.

Following the Court's preliminary review conducted pursuant to 28 U.S.C. §1915A, Plaintiff proceeds on two claims:

|  |  |
|---|---|
| Count 1: | Defendant Stover denied Plaintiff adequate medical care for his left leg injury beginning in 2018, in violation of the Eighth Amendment. |
| Count 2: | Defendant Wexford delayed or denied Plaintiff's referral for outside testing and treatment of his left leg injury in order to reduce costs, resulting in prolonged or exacerbated injuries, in violation of the Eighth Amendment. |

Defendant Wexford moves for summary judgment, contending that Plaintiff failed to exhaust his administrative remedies regarding his claim against Wexford. Docs. 33, 34, 35. Plaintiff did not file a Response. The Court held a hearing on February 27, 2025. Doc. 50. Also pending before the Court is Plaintiff's Motion for Recruitment of Counsel. Doc. 36.

## Exhaustion Requirements

Pursuant to 42 U.S.C. § 1997e(a), prisoners are required to exhaust available administrative remedies prior to filing lawsuits in federal court. "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). "[A]ll dismissals under § 1997e(a) should be without prejudice." *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004).

An inmate in the custody of the Illinois Department of Corrections must first submit a written grievance within 60 days after the discovery of the incident, occurrence or problem, to his or her institutional counselor. 20 ILL. ADMIN. CODE § 504.810(a). If the complaint is not resolved through a counselor, the grievance is considered by a Grievance Officer who must render a written recommendation to the Chief Administrative Officer — usually the Warden — within 2 months of

2

receipt, "when reasonably feasible under the circumstances." *Id*. §504.830(e). The CAO then advises the inmate of a decision on the grievance. *Id.*

An inmate may appeal the decision of the Chief Administrative Officer in writing within 30 days to the Administrative Review Board ("ARB") for a final decision. *Id.* § 504.850(a); *see also Dole v. Chandler*, 438 F.3d 804, 806–07 (7th Cir. 2006). The ARB will submit a written report of its findings and recommendations to the Director who shall review the same and make a final determination within 6 months of receipt of the appeal. 20 ILL. ADMIN. CODE § 504.850(d) and (e).

Inmates who intend to file suit must follow all steps and instructions in the grievance process before filing with the Court in order to "[allow prisons] to address complaints about the program [they administer] before being subjected to suit, [reduce] litigation to the extent complaints are satisfactorily resolved, and [improve] litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007). However, an inmate is only required to exhaust the administrative remedies that are available to him. *Lewis v. Washington,* 300 F.3d 829,833 (7th Cir. 2002).

### Plaintiff's grievance records

Defendant Wexford subpoenaed Plaintiff's grievance records from the ARB and attached those records as exhibits to its summary judgment motion. Docs. 34-1 and 34-2. Defendant also obtained Plaintiff's Lawrence grievance records from the Illinois Attorney General's office. Doc. 34-2. The records received pursuant to the ARB subpoena reflect that Plaintiff submitted a grievance dated June 10, 2018 that provides the following summary:

> On May 27th while playing basketball in the gym I hurt my left leg. I was taken from the gym to health care. I explained to the nurse I jump [sic] came down heard a pop in my leg an immediately fell to the floor. I was given an ace wrap, crutches, and fifteen 200 mg ibuprofen I believe. I was told I would be called back over in a few days to see the doctor. On May 29th I signed up for a call pass to the health care for May 30th. On May 20th I saw the nurse practitioner. She gave me thirty 400 mg ibuprofen and told me I would be called over again in a

3

week. I hurt my left leg two weeks ago no examination was ever [done] now my leg is [swollen] from my knee down to my foot with a stiffness in my knee. I have no idea why my leg is more swollen now than it was the day I hurt it. I just hope the failure of health care to examine and determine what is wrong with my leg does not effect my mobility long term.

Relief Request: To have my leg examined/x-ray to determine if something in my leg is torn and/or fractured that may require surgery and to get the treatment I need for my leg to heal properly.

*Id.*, p. 148. Plaintiff's counselor responded the next day, stating that Plaintiff "was to follow up with nurse practitioner. Call pass scheduled for 6/14/18." *Id.* Plaintiff submitted the grievance to the grievance officer, who recommended denying the grievance and the Warden concurred on August 6, 2018. *Id.*, p. 147. Plaintiff submitted another grievance to the grievance officer dated June 25, 2018, writing "this grievance is an appeal to the grievance I submitted June 10th. The counselor's response…did not address my concern." *Id.*, p. 150. The June 25, 2018 grievance was given the same number (07-18-80) as the June 10, 2018 grievance and appears to have been treated as one grievance. Doc. 34-2, pp. 196-201.

Plaintiff appealed to the ARB who also denied the grievance on November 27, 2018, finding that "offender has been seen and treated. All medical treatment must be ordered by IDOC physicians and is not a matter of inmate preference." Doc. 34-1, p. 146.

Plaintiff filed suit on March 8, 2023. Defendant Stover raised and then abandoned the exhaustion defense. Doc. 49. Apart from the June 2, 2018 and June 25, 2018 grievances, none of the grievance records mention treatment for Plaintiff's leg. *Id.*

In his Complaint, Plaintiff alleged that to exhaust his administrative remedies, he "filed a grievance after conversing with the counselor. Appealed the counselor's response. Appealed the grievance officer's response to the ARB. Months later submitted another grievance was told it was a duplicate." Doc. 1, p. 4. Plaintiff attached the duplicate grievance to his Complaint; it is dated July 12, 2018 and his counselor responded to him on that date, noting the grievance was a duplicate

4

to grievance #7-18-80 and that Plaintiff saw the nurse practitioner on June 13, 2018.

### *Pavey* Hearing

Plaintiff testified that nothing in the institutional rules required him to identify Wexford in any grievance. He explained that he fully exhausted a grievance identifying Nurse Practitioner Stover, and she was a Wexford employee. He further testified that in 2018, Nurse Practitioner Stover noted that Plaintiff needed an MRI, but Wexford would not send him out for the MRI until 2021 (and he had to have a CT scan first). After he exhausted the grievance regarding Nurse Practitioner Stover in 2018, Plaintiff attempted to submit additional grievances regarding his leg (at least once a year for four years), but they were returned to him as duplicates.

### Discussion

When comparing Plaintiff's grievance records to his claim against Wexford in his Complaint, it seems that Plaintiff did not exhaust his administrative remedies against Wexford. The 2018 grievances that were numbered #7-18-80 and fully exhausted specifically mention Plaintiff's claim against Defendant Stover: that she provided no treatment for Plaintiff's leg. As Plaintiff alleged in his Complaint and reiterated at the *Pavey* hearing, he was told "for years" after the initial injury that there was nothing wrong with his leg. These allegations are distinct and make a separate claim from the allegations against Wexford in his Complaint: that after Plaintiff saw Nurse Practitioner Luking in October 2020 and she recommended an MRI, Wexford delayed and denied the MRI to save money. The records before the Court reflect that Plaintiff did not submit any grievances regarding his leg after 2018.

At the *Pavey* hearing, however, Plaintiff testified that Nurse Practitioner Stover wrote in her 2018 notes that Plaintiff needed an MRI. Plaintiff did not make this allegation in his Complaint and it seemingly contradicts the allegations in his Complaint and his other testimony at the Pavey hearing that Nurse Practitioner Stover told him there was nothing wrong with his leg for two and a half years.

The Court does not have Plaintiff's medical records.  Assuming that a note by Nurse Practitioner Stover recommending an MRI in 2018 exists, and assuming that Plaintiff did not have access to his medical records prior to filing suit and otherwise had no knowledge that Nurse Practitioner Stover made such a note, then he could not have submitted a grievance regarding the denial of the MRI starting in 2018.

Of course, at this point, the Court can only speculate regarding whether Nurse Practitioner Stover recommended an MRI in 2018.  The Court also considers Plaintiff's testimony that he attempted to submit additional grievances at Lawrence regarding treatment for his leg that were returned to him as "duplicates", but none of those grievances are in the record.  However, the Court notes that Plaintiff attached a grievance deemed "duplicate" to his Complaint and that grievance is listed in the Lawrence grievance log with no mention of whether it was deemed duplicate; the grievance itself is not within the Lawrence grievance records.  Doc. 1, p. 8;  Doc. 34-2.  Thus, one could infer that the absence of any "duplicate" grievances regarding Plaintiff's leg post-2018 in Plaintiff's Lawrence grievance records does not conclusively indicate whether he attempted to submit any.  Defendant carries the burden on its Motion for Summary Judgment, and at this time, Defendant has not met that burden.  At the *Pavey* hearing, however, Wexford was not prepared to meaningfully respond to Plaintiff's arguments because Plaintiff had not filed a Response to their Motion.  Accordingly, Defendant's Motion is DENIED WITHOUT PREJUDICE.

### Plaintiff's Motion for Recruitment of Counsel

There is no statutory or constitutional right to counsel in a civil case.  However, this Court may recruit an attorney to represent a litigant who cannot afford counsel.  28 U.S.C. §1915(e). When presented with a request to appoint counsel, the Court makes the following inquiries: (1) has the indigent plaintiff made a reasonable attempt to obtain counsel or effectively been precluded from doing so, and (2) given the difficulty of the case, does the plaintiff appear competent to litigate it

himself.  *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007).   Here, Plaintiff unsuccessfully attempted to obtain representation in this case.   Doc. 3, p. 5; Doc. 36, p. 1.   The underlying issues in Plaintiff's claim (whether the delay or denial of diagnostic treatment affected the outcome and/or severity of his leg injury) are complex enough to warrant the recruitment of counsel.

Therefore, in accordance with 28 U.S.C. § 1915(e)(1) and Local Rule(s) 83.8 and 83, Attorney Dulijaza "Julie" Clark of the firm  Edelman, Combs, Latturner, Goodwin LLC is **ASSIGNED** to represent Plaintiff Eugene Wright in this civil rights case.  On or before March 18, 2025, assigned counsel shall enter her appearance in this case.  Attorney Clark is free to share responsibilities with an attorney in her firm who is also admitted to practice in this district court. Assigned counsel, however, must enter the case and shall make first contact with Plaintiff, explaining that another attorney may also be working on the case.  Plaintiff should wait for his attorney to contact him in order to allow counsel an opportunity to review the court file.

The Clerk of Court is **DIRECTED** to transmit this Order to Attorney Clark.  The electronic case file is available through the CM-ECF system.

Now that counsel has been assigned, Plaintiff <u>shall not</u> personally file anything in this case, except a pleading that asks that he be allowed to have counsel withdraw from representation. If counsel is allowed to withdraw at the request of Plaintiff, there is no guarantee the Court will appoint other counsel to represent Plaintiff.

Counsel is **ADVISED** to consult Local Rules 83.8-83.14 regarding *pro bono* case procedures.

Plaintiff and his counsel are **ADVISED** that, because Plaintiff is proceeding *in forma pauperis*, if there is a monetary recovery in this case (either by verdict or settlement), any unpaid out-of-pocket costs must be paid from the proceeds.  *See* SDIL-LR 3.1(b)(4).  If there is no recovery in the case (or the costs exceed any recovery), the Court has the discretion to reimburse expenses.

Section 2.6 of this Court's Plan for the Administration of the District Court Fund provides for a degree of reimbursement of *pro bono* counsel's out-of-pocket expenses, as funds are available. The Plan can be found on the Court's website, as well as the form motion for out-of-pocket expenses and an Authorization/Certification for Reimbursement. Any motion for reimbursement must be made within 30 days from the entry of judgment, or reimbursement will be waived. SDIL-LR 83.13(b). The funds available for this purpose are limited, however, and counsel should use the utmost care when incurring out-of-pocket costs. In no event will funds be reimbursed if the expenditure is found to be without a proper basis. The Court has no authority to pay attorney's fees in this case. No portion of a partial filing fee assessed pursuant to 28 U.S.C. § 1915 will be reimbursed. Counsel may be reimbursed for PACER fees for this case.

The district court has entered into an agreement with attorney Alan Mills and the Uptown People's Law Center to consult with lawyers on issues in these cases, including substantive and procedural questions (both legal and practical) and dealing with the client. Mr. Mills can be reached by email at alan@uplcchicago.org. He can also be reached by phone at 773-769-1411; however, email is his preferred means of contact. His services are available to counsel free of charge, as long as counsel is representing a prisoner *pro bono* on a case in the district. In addition, the Court's website, www.ilsd.uscourts.gov, includes a guide for attorneys which is available as a resource. It is listed under "Attorney Information" as "Guide for Attorneys Recruited to Represent Plaintiffs in Section 1983 Cases." The Court encourages appointed counsel to consult it and Mr. Mills as needed.

As of this date, Plaintiff's contact information is:

Eugene Wright
818 E. 63, #445
Chicago, Il 60637

**Conclusion**

The Motion for Summary Judgment by Wexford Health Sources, Inc. (Doc. 33) is DENIED

WITHOUT PREJUDICE.  Plaintiff's Motion for Recruitment of Counsel (Doc. 36) is GRANTED

and Attorney Dulijaza "Julie" Clark is assigned to represent Plaintiff.  The Court will set new

Scheduling Order deadlines after counsel enters her appearance and will set a deadline for

Defendants to again raise the exhaustion defense.

**IT IS SO ORDERED.**

**DATED:  March 4, 2025**


s/ *Reona J. Daly*

**Hon. Reona J. Daly**
**United States Magistrate Judge**