IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

EUGENE WRIGHT.,

    Plaintiff,

    v.

SARA STOVER and WEXFORD HEALTH
SOURCES, INC.,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 23-cv-813-RJD

## **ORDER**

**DALY, Magistrate Judge:**

Plaintiff, formerly incarcerated within the Illinois Department of Corrections ("IDOC") at Lawrence Correctional Center ("Lawrence"), filed this lawsuit pursuant to 42 U.S.C. §1983. Docs. 1.   His original Complaint was prepared pro se and he was allowed to proceed in forma pauperis.  *Id*.; Doc. 6.  He alleged that he injured his left leg while playing basketball in May 2018 and then from May 2018 until October 2020, he requested medical care from Defendant Stover for swelling, buckling, and popping in his left knee.  Doc. 1.  At each appointment, Defendant Stover told him that nothing was wrong.  *Id*.  In October 2020, Plaintiff met with Nurse Practitioner Luking for the first time.  *Id*.  She recommended magnetic resonance imaging on Plaintiff's knee.  *Id*.   However, Plaintiff was not transferred from the prison to an outside hospital for a radiology appointment until May 2021 because Wexford Health Sources, Inc.

Page **1** of **8**

("Wexford", a private company that contracted with the IDOC to provide medical care to inmates)[1] allegedly had a custom of denying or delaying offsite medical treatment to maximize company profits. *Id*. At the May 2021 appointment, Plaintiff received a CT scan (instead of an MRI) that revealed a "breakage" that had healed. *Id*. Later that year, Plaintiff finally saw a doctor and underwent an MRI. *Id*.

Following the Court's preliminary review conducted pursuant to 28 U.S.C. §1915A, Plaintiff proceeded on two claims:

> Count 1:    Defendant Stover denied Plaintiff adequate medical care for his left leg injury beginning in 2018, in violation of the Eighth Amendment.
>
> Count 2:    Defendant Wexford delayed or denied Plaintiff's referral for outside testing and treatment of his left leg injury in order to reduce costs, resulting in prolonged or exacerbated injuries, in violation of the Eighth Amendment.

Plaintiff was incarcerated when he filed this suit. Docs. 2 and 3. He was released from prison approximately two weeks later. Doc. 7. Because he was incarcerated at the time he filed the lawsuit, he was required to exhaust his administrative remedies before he submitted the Complaint to the Court. 42 U.S.C. § 1997e(a); *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020). Defendant Wexford filed a Motion for Summary Judgment on the issue of administrative remedy exhaustion. Doc. 33. Plaintiff did not file a Response to the Motion but appeared pro se at an evidentiary hearing on the motion. Following the hearing, the undersigned denied Wexford's motion, finding that the testimony Plaintiff gave at the hearing created a genuine issue of material fact as to whether Plaintiff exhausted his administrative remedies against Wexford.

---

[1] Wexford is a private company that contracted with the IDOC to provide medical care to inmates.

Doc. 50.   However, the Court noted that Wexford did not have the opportunity to adequately respond to Plaintiff's arguments because he did not file a Response and raised evidentiary issues for the first time at the hearing; the motion was therefore denied without prejudice.   Doc. 50.   The Court then recruited counsel to represent Plaintiff, noting that the issue of whether delayed/denied diagnostic treatment affected the outcome of Plaintiff's leg injury seemed too complex for Plaintiff to litigate on his own behalf.   Docs. 51, 52.

Currently pending before the Court is Wexford's Second Renewed Motion for Summary Judgment to which Plaintiff responded and Wexford replied.   Docs. 80, 81, 84, 85. Wexford's First Renewed Motion for Summary Judgment was also denied without prejudice because after it was filed, Plaintiff was granted leave to amend his Complaint.   Doc. 74.

In the First Amended Complaint, Plaintiff's counsel made some of the same allegations that Plaintiff made on his own behalf in the original Complaint.   Plaintiff injured his left leg playing basketball in May 2018.   Defendant Stover failed to order an MRI for him and persisted in a course of conservative treatment for approximately six months that consisted of x-rays, an Ace wrap, and Ibuprofen.   Doc. 77, ¶¶13-16, 24-46.   Over the course of the next three years, Plaintiff saw three other clinicians (Nurse Practitioner Luking, Dr. Shah, and Dr. Ahmed) at Lawrence, and none of them ordered an MRI for him.   *Id.*, ¶¶47-65.   They continued prescribing Ibuprofen to him and ordered more x-rays.   *Id.*, ¶¶49, 58.   Plaintiff also received Prednisone and underwent a CT scan that revealed a healed fracture in his left leg.   *Id.*, ¶¶52, 65.   In late 2021, a new physician transferred Plaintiff to an outside facility where he underwent an MRI that revealed a "left knee tear of the meniscus."   *Id.*, ¶¶66, 67.   Plaintiff alleges that Wexford "pressure[d] its employees not to order MRIs for prisoners to maximize profits at the expense of prisoners' health."   *Id.*, ¶32.

**Exhaustion Requirements**

Pursuant to 42 U.S.C. § 1997e(a), prisoners are required to exhaust available administrative remedies prior to filing lawsuits in federal court. "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). Inmates who intend to file suit are required to follow all steps and instructions in the grievance process before filing with the Court in order to "[allow prisons] to address complaints about the program [they administer] before being subjected to suit, [reduce] litigation to the extent complaints are satisfactorily resolved, and [improve] litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007).

An inmate in the custody of the Illinois Department of Corrections must first submit a written grievance within 60 days after the discovery of the incident, occurrence or problem, to his or her institutional counselor, unless certain discrete issues are being grieved. 20 ILL. ADMIN. CODE § 504.810(a). The grievance must contain "factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 ILL. ADMIN. CODE § 504.810(c). If the complaint is not resolved through a counselor, the grievance is considered by a Grievance Officer who must render a written recommendation to the Chief Administrative Officer — usually the Warden — within 2 months of receipt, "when reasonably feasible under the circumstances." *Id*. §504.830(e). The Chief Administrative Officer then advises the inmate of a decision on the grievance. *Id.*

An inmate may appeal the decision of the Chief Administrative Officer in writing within 30 days to the Administrative Review Board ("ARB") for a final decision. *Id.* § 504.850(a);

*see also Dole v. Chandler*, 438 F.3d 804, 806–07 (7th Cir. 2006).   The ARB will submit a written

report of its findings and recommendations to the Director who shall review the same and make a

final determination within 6 months of receipt of the appeal.   20 ILL. ADMIN. CODE § 504.850(d)

and (e).

### Plaintiff's Grievances

Defendant's undisputed material facts reflect that Plaintiff fully exhausted a grievance

dated June 10, 2018 that contained the following narrative:

> On May 27th while playing basketball in the gym I hurt my left leg.
> I was taken from the gym to health care. I explain[ed] to the nurse I
> jump[ed] came down heard a pop in my leg an[d] immediately fe[ll]
> to the floor.   I was given an ace wrap, crutches and fifteen 200 mg
> ibuprofen. I believe I was told I would be call[ed] back over in a few
> days to see the doctor.   On May 29th I sign for a call pass to the
> health care for May 30th.   On May 30th I saw the nurse practitioner.
> She gave me thirty 400 mg Ibuprofen and told me I would be call[ed]
> over again in a week. I hurt my left leg two weeks ago no
> examination was ever did now my leg is swell from my knee down
> to my left foot with a stiffness in my knee.   I have no idea why my
> leg is more swollen now then it was the day I had it.   I just hope the
> failure of health care to examine and determine what is wrong with
> my leg does not effect my mobility long term.
>
> Relief Requested: To have my leg examine/xray to determine if
> something in my leg is torn and or fracture that may require surgery
> and to get the treatment I need for my leg to heal properly.

Doc. 81, ¶6.   Staff apparently informed the grievance officer that x-rays were ordered and Plaintiff

was "being seen and treated by licensed Illinois medical providers."   *Id*.; Doc. 81-1, p. 147.   The

grievance officer recommended the grievance be denied and the warden concurred.   *Id*.

Plaintiff also submitted a grievance on July 12, 2018, providing the following information:

> On June 14, 2018, I was told by the nurse practitioner I would have
> my left leg x-rayed and would receive Ibuprofen for three months.
> My leg was injured on May 27, 2018.   It's going on two months my
> leg is still swollen.   I [] wrote health care but my requests are being

Page **5** of **8**

> ignore[d].   Health care has not taken any steps to have my leg x-rayed.   My knee has been popping and at time[s] my leg feel[s] as if it is giv[ing] out.   The neglect of health care to treat my injury is putting my physical health and abilities at risk.
>
> Relief Requested: To have my leg x-rayed to determine if there is a tear or fracture and whatever treatment is needed to fix it.   And to be given the ibuprofen.

Defendant's undisputed material facts further reflect that this grievance was deemed a duplicate of the June 10, 2018 grievance and returned to Plaintiff on September 10, 2018.   Doc. 81, ¶10(c); Doc. 81-3, p. 2; Doc. 1, pp. 7-8.

## Discussion

Failure to exhaust administrative remedies is an affirmative defense for which Defendant bears the burden "of proving 'that an administrative remedy was available'" to Plaintiff and that he failed to exhaust it.   *Crouch v. Brown*, 27 F. 4th 1315, 1320 (7th Cir. 2022) (*quoting Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015)).   The record reflects that Plaintiff submitted at least two grievances at Lawrence that informed prison officials that he believed he was not receiving treatment for his leg to "heal properly."   One of those grievances was fully exhausted, the other returned as a duplicate.   Comparing Plaintiff's allegations against Wexford in the First Amended Complaint to the statements made in those grievances, the Court is not convinced that Plaintiff failed to exhaust his claim against Wexford.   The Illinois Administrative Code did not require Plaintiff to identify Wexford by name in his grievances.    Rather, Plaintiff was required to include the factual details regarding each aspect of the issue grieved.   20 ILL. ADMIN. CODE § 504.810(c). At the time Plaintiff submitted his grievances, Plaintiff knew that he had a worsening injury for which no imaging was performed, nor had he ever been examined.   Plaintiff included those details in his grievances.   Doc. 81, ¶6.

Of course, in both grievances, Plaintiff requested x-rays of his leg, not magnetic resonance imaging.   In his First Amended Complaint, Plaintiff alleges that magnetic resonance imaging is required to detect soft tissue injuries, while x-rays reveal injuries to the bone.   More than three years after his initial injury (and after he submitted the grievances), Plaintiff learned that he had suffered a meniscus tear.   The Court is unaware of any case law (nor does Wexford point to any) that required Plaintiff to correctly identify which diagnostic testing was necessary for his injury at the time he submitted his grievance in order for his claim against Wexford to now proceed in this case.   Surely prison officials at Lawrence were aware that Wexford was responsible for ordering and acting upon the appropriate diagnostic testing for Plaintiff's symptoms.

When Wexford first raised the affirmative defense of administrative remedy exhaustion, Plaintiff's allegations against Defendants Stover and Wexford in his original Complaint could be separated into distinct claims.   First, Defendant Stover treated Plaintiff for more than two years and never ordered an MRI; then Wexford failed to provide an MRI for Plaintiff after another practitioner recommended it.   The undersigned noted in the Order on Wexford's First Motion for Summary Judgment that under those alleged facts, a grievance that included the allegations against Defendant Stover would not necessarily encompass Plaintiff's claim against Wexford.   In the First Amended Complaint (prepared by counsel after reviewing Plaintiff's medical records), Plaintiff's allegations against Defendant Stover are intertwined with his allegations against Wexford.   He alleges that Defendant Stover was one of multiple Wexford providers who did not order an MRI for Plaintiff because Wexford pressured its providers to order less expensive care.   While Plaintiff presumably did not know in 2018 that he needed an MRI when he submitted the grievances, and therefore presumably did not consider how the alleged cost-saving custom was affecting his care when he submitted grievances, he nonetheless wrote two grievances that identified what he

believed was inadequate diagnostic testing and treatment.    Plaintiff was not required to continue

submitting grievances about the ongoing lack of testing and treatment for his injury.    *See Turley*

*v. Rednour,* 729 F.3d 645, 650 (7th Cir. 2013).

Plaintiff's First Amended Complaint alleges that Defendant Stover and other Wexford

providers were deliberately indifferent because they did not order the appropriate diagnostic test

and persisted in a course of conservative treatment in an effort to save money.    The Court finds

that Plaintiff complied with the requirements of the Illinois Administrative Code in exhausting at

least one grievance that sufficiently addressed these allegations.    Accordingly, Wexford's Motion

for Summary Judgment is DENIED.

**IT IS SO ORDERED.**

**DATED:   May 13, 2026**

_____

**Hon. Reona J. Daly**
**United States Magistrate Judge**